**BOSTWICK & JASSY LLP**
Gary L. Bostwick (*pro hac vice* application pending)
　gbostwick@bostwickjassy.com
Jean-Paul Jassy (*pro hac vice* application pending)
　jpjassy@bostwickjassy.com
12400 Wilshire Boulevard, Suite 400
Los Angeles, California 90025
Tel:　310-979-6059
Fax:　310-314-8401

**KEMP, JONES & COULTHARD, LLP**
Will Kemp (Bar No. 1205)
　jk@hkj-law.com
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
Tel:　702-385-6000
Fax:　702-385-6001

Attorneys for Defendant
LegalZoom.com, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| INCORP SERVICES, INC., a Nevada corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>LEGALZOOM.COM, INC., a Delaware corporation,<br><br>　　　　　　　Defendant. | Case No. 2:09-CV-00273-RJH-(LRL)<br><br>**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AFFIDAVIT OF KATHRYN PELLMAN WITH EXHIBIT A** |

-1-

MOTION TO TRANSFER VENUE

Defendant LegalZoom.com, Inc. ("LegalZoom") moves the Court for an order transferring venue of this action to the United States District Court for the Central District of California pursuant to 28 USC § 1404(a).

The grounds for this Motion are amplified and explained further in the attached Memorandum of Points and Authorities. This Motion is based on the attached Memorandum of Points and Authorities, the Affidavit of Kathryn Pellman with Exhibit A, all pleadings and records in this action, and such other and further evidence and argument as the Court may accept or judicially notice at the hearing on this Motion.

DATED: March 19, 2009

**KEMP, JONES & COULTHARD, LLP**

By _____
WILL KEMP
Attorneys for Defendant LegalZoom.com, Inc.

**BOSTWICK & JASSY LLP**
Gary L. Bostwick (*pro hac vice* application pending)
   gbostwick@bostwickjassy.com
Jean-Paul Jassy (*pro hac vice* application pending)
   jpjassy@bostwickjassy.com
12400 Wilshire Blvd., Suite 400
Los Angeles, California 90025
Tel: 310-979-6059
Fax: 310-314-8401

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The balance of conveniences and the interests of justice make clear that this action should proceed in Los Angeles, California. *All* of the acts about which Plaintiff complains occurred, if they occurred at all, in Los Angeles. The vast majority of known potential witnesses reside in Southern California. Of 187 potential witnesses to LegalZoom's purported liability, 185 reside in the Los Angeles area. The district court in Los Angeles will have a greater ability to compel the attendance at trial of at least 73 potential non-party witnesses because those witnesses reside in Southern California. The likely majority of potential documents – and *all* of the known documents pertaining to liability – are located in Los Angeles. As explained in greater detail below, it would be far more convenient, expeditious and cost-effective to LegalZoom for this action to proceed in Los Angeles. Plaintiff, on the other hand, is, by its own admission, accustomed to conducting business all across the country and would not be prejudiced if this action were to proceed in Los Angeles.

## II. SUMMARY OF PERTINENT FACTS

LegalZoom is a Delaware corporation with its principal place of business in Los Angeles, California. Complaint, ¶ 3. Plaintiff alleges that it is a Nevada corporation with its principal place of business in Henderson, Nevada. Complaint, ¶ 2. Plaintiff goes on to allege, however, that it conducts business "in all 50 states and in the District of Columbia," and that it "is currently the 4th largest national registered agent service provider in the country, with over 55,000 active clients worldwide." *Id.*

Plaintiff's Complaint alleges causes of action for: (1) trade libel pursuant to 15 U.S.C. § 1125(a); (2) defamation; and (3) violations of Nevada's deceptive trade practices statute, N.R.S. § 598.0915. Complaint, pages 3-5.[1] Each of Plaintiff's causes of action is based on, and arises exclusively from, purportedly false and injurious statements (the "Alleged Statements")

---

[1] LegalZoom has concurrently filed a motion to dismiss the third cause of action, for alleged violations of Nevada's Deceptive Trade Practices Act, N.R.S. § 598.0915.

supposedly made by LegalZoom's "telephone representatives" to Plaintiff's unspecified "potential customers" who reside in unspecified locations. *See* Complaint, ¶ 11; *see also id.*, ¶¶ 16, 24, 34.

*All* of LegalZoom's "telephone representatives" are, and always have been, located in Los Angeles, California. Affidavit of Kathryn Pellman ("Pellman Aff."), ¶ 4. LegalZoom's "telephone representatives" include LegalZoom's sales representatives and customer service representatives. Pellman Aff., ¶¶ 4-7. Plaintiff claims that the Alleged Statements were made by LegalZoom's "telephone representatives" "since at least 2008." Complaint, ¶ 11. Since January 1, 2007, LegalZoom has employed 129 telephone representatives. Pellman Aff., ¶ 5. Of these individuals, 82 are currently employed by LegalZoom and 47 are former employees. *Id.* Of those 47 former employees, 45 still live in the Los Angeles or Southern California area, based on the last known residence information provided to LegalZoom. *Id.*, ¶ 8; *see also* Ex. A to Pellman Aff. Since January 1, 2007, LegalZoom also utilized at least 41 temporary non-employee workers for telephone representative work. Pellman Aff., ¶ 6. Of these individuals, 15 are currently temporary non-employee workers for LegalZoom, and 26 are former temporary non-employee workers. *Id.* LegalZoom is informed and believes that all 26 former temporary non-employee workers still reside in the Los Angeles or Southern California area. *Id.*, ¶ 8.

In addition to the individuals identified above, 15 current employees and 2 former employees in supervisory capacities have or had knowledge since January 1, 2007 of the practices, procedures and training policies regarding or relating to telephone sales or customer service at LegalZoom. *Id.*, ¶ 9. All 15 such current employees reside in the Southern California area, and on information and belief, the two former employees also still reside in the Southern California area. *Id.* Combined, there are 170 current and former "telephone representatives" and 17 current and former supervisors who may be witnesses in this action. *Id.*, ¶¶ 5-9.

All known documents pertinent to potential liability in this matter are located in Los Angeles. All sales and customer services scripts, training manuals, policies, and e-mail templates are located at LegalZoom's headquarters in Los Angeles, California. Pellman Aff., ¶ 10. LegalZoom's computers and primary servers also are all located in Los Angeles County, California. *Id.*

It would be a significant inconvenience, cost and disruption to LegalZoom's business to have this case proceed in this District. *See* Pellman Aff., ¶11. LegalZoom's telephone representatives have everyday responsibility for direct contact with LegalZoom customers via telephone and email. *Id.* As detailed in the Pellman Affidavit, the loss or lack of availability of even a single employee for a scheduled shift has an immediate adverse impact on operations resulting in a diminished service experience for LegalZoom's customers, an increased workload placed on other employees and increased costs and burdens for LegalZoom. *Id.*

## III. THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

This Court may, "for the convenience of the parties and witnesses, in the interest of justice, … transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) ("Section 1404(a)"). A motion to transfer pursuant to Section 1404(a) "presents two basic questions: (1) whether the action sought to be transferred 'might have been brought' in the proposed transferee district; and (2) whether the transfer would be '(f)or the convenience of parties and witnesses, in the interest of justice.'" *International Patent Development Corp. v. Wyomont Partners*, 489 F.Supp. 226, 228 (D. Nev. 1980) (internal quotation marks omitted). Whether an action "might have been brought" in the proposed transferee district involves an evaluation of the "legal issues of jurisdiction, venue and the defendants' amenability to service in the proposed transferee forum." *Id.* Whether an action would be "for the convenience of the parties and witnesses, in the interests of justice," requires a balancing of "such factors as the plaintiff's right to choose its forum, the convenience of witnesses and parties, … avoidance of the delay and expense inherent in duplicative litigation," *id.*, as well as "relative ease of access to proof, judicial economy, and availability of compulsory process," *Miracle Blade, LLC v. Ebrands Commerce Group, LLC*, 207 F.Supp.2d 1136, 1156 (D. Nev. 2002). The two factors typically given the greatest consideration in deciding whether to transfer an action are: "(1) the convenience of parties and witnesses, and (2) where the relevant events took place." *Aluminal Industries, Inc. v. Newtown Commercial Associates*, 89 F.R.D. 326, 330 (S.D.N.Y. 1980). "The moving party

bears the burden of showing the balance of conveniences favors the transfer." *Miracle Blade*, 207 F.Supp.2d at 1155.

### A. This Action "Might Have Been Brought" In The Central District Of California

LegalZoom's principal place of business is Los Angeles, California, which is in the Central District of California. Complaint, ¶ 3. Personal jurisdiction and venue would have been proper in the Central District of California. *See* 28 U.S.C. § 1391(c). LegalZoom is amenable to service in the Central District of California. Thus, this action "might have been brought" in Los Angeles. 28 U.S.C. § 1404(a).

### B. The Balancing Of Factors Weighs Strongly In Favor Transferring This Action To The Central District Of California

#### 1. All Of The Operative Events Giving Rise To Plaintiff's Claims Occurred, If They Occurred At All, In California

When evaluating a motion to transfer venue pursuant to Section 1404(a), special consideration must be given to plaintiffs' and defendants' contacts with the chosen forum as those contacts relate to plaintiff's causes of action. *Kachal, Inc. v. Menzie*, 738 F.Supp. 371, 373 (D. Nev. 1990) (holding that "[c]onsideration must be given to both the defendants' and the plaintiff's contacts with the chosen forum, especially those relating to the cause of action," and transferring venue from Nevada to the Central District of California even though plaintiff was a Nevada corporation and the parties had a contractual clause selecting Nevada as their forum). "[I]n defamation cases," for example, "'venue is proper in a district in which the allegedly defamatory statement was published[.]'" *Lomanno v. Black*, 285 F.Supp.2d 637, 642 (E.D. Pa. 2003). In *Lomanno*, the plaintiff alleged claims for defamation and tortious interference based on defendants' purportedly false statements made in Virginia. *Id.* at 642-643. The district court, in the Eastern District of Pennsylvania, held that venue was proper in the Northern District of Virginia where the purportedly defamatory and tortious statements were made, and further held that venue was *not* proper in Pennsylvania in part because "venue will not be proper in a district for a defamation claim if injury is the only event occurring in that district." *Lomanno*, 285 F.Supp.2d at 642. The *Lomanno* court concluded that "plaintiff's choice of forum merits less

-6-
MOTION TO TRANSFER VENUE

deference when none of the conduct complained of occurred in plaintiff's selected forum." *Lomanno*, 285 F.Supp.2d at 644 (internal quotation marks omitted); *see also Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F.Supp. 1308, 1311 (D. Nev. 1982) (transferring venue from Nevada to California, and giving plaintiff's choice of forum in Nevada little weight even when coupled with fact that *defendant* was incorporated in Nevada).

Each of Plaintiff's claims is based on the publication of the Alleged Statements, all of which involve purportedly injurious falsehoods about Plaintiff. *See* Complaint, ¶¶ 11, 16, 24, 34. LegalZoom denies that any of its representatives published or made any of the Alleged Statements. However, even if one or more of LegalZoom's "telephone representatives" made some or all of the Alleged Statements, *see* Complaint, ¶ 11, they would have done so in Los Angeles, California because all of LegalZoom's "telephone representatives," including all of its customer service and sales representatives are located in Los Angeles. Pellman Aff., ¶ 4. Thus, the publication of the Alleged Statements, if it happened at all, would have happened in Los Angeles.

### 2. The Convenience To Witnesses, Particularly Those With Information About Purported Liability, Weighs Heavily In Favor Of Transfer

This Court has held that the convenience of witnesses is a "primary concern," *Cambridge Filter*, 548 F.Supp. at 1311, and "of considerable importance," *Kachal*, 738 F.Supp. at 373, when deciding a motion made pursuant to Section 1404(a). *See also* 28 U.S.C. § 1404(a) (specifically identifying "convenience of ... witnesses" as a factor under Section 1404(a)). Not all witnesses are accorded the same level of importance; witnesses to liability are considerably more important than damages witnesses when considering a transfer of venue: "When considering a transfer of venue, the key witnesses are those which have information regarding the liability of Defendant. [Citation omitted.] Damage witnesses are accorded less weight due to the fact that without liability, there are no damages to recover." *Ramsey v. Fox News Network, LLC*, 323 F.Supp.2d 1352, 1357 (N.D. Ga. 2004) (transferring defamation case from Georgia to Colorado in large part because the majority of witnesses as to liability were in Colorado).

In *Ramsey*, a defamation case, the court held that "the convenience of key witnesses" weighed "heavily in favor" of transferring the action from Georgia to Colorado where the liability witnesses to an alleged defamation were "overwhelmingly" residents of Colorado, and, the court held, "[t]ransferring this case to the District of Colorado will alleviate the burden on them, and will permit the use of compulsory process to secure live testimony." *Ramsey*, 323 F.Supp.2d at 1357. There was a "heavy" weight in favor of transfer even though the plaintiffs in *Ramsey* listed 20 damages witnesses who resided in Georgia. *Id.* In *Lomanno*, another defamation case, the plaintiff identified only himself as a witness in the original forum of Pennsylvania, whereas the defendants identified many more potential witnesses in the proposed transferee forum of Virginia. *Lomanno*, 285 F.Supp.2d at 646.

Plaintiff alleges that LegalZoom's "telephone representatives" have stated, and continue to state, the Alleged Statements, *see* Complaint, ¶¶ 11, 12, but LegalZoom denies that the Alleged Statements were ever published or uttered at all. Thus, liability for Plaintiff's claims will turn in substantial part on proving whether the Alleged Statements were made, and, even if they were made, what the purported speaker(s)' mental state or culpability was at the time and whether the statements were privileged. *See, e.g., People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 619, 895 P.2d 1269, 1272 (1995) (listing elements of defamation, including publication and fault). All but two of the ***170*** current and former "telephone representative" witnesses – and another 17 of their current and former supervisors – with information about LegalZoom's purported liability are located in Los Angeles.[2]

///

---

[2] Plaintiff claims that unspecified customers in unspecified locations were the recipients of the Alleged Statements. *See* Complaint, ¶ 11. Plaintiff does not allege that any of those customers were in Nevada. *See generally id.* Plaintiff goes on to allege that customers were inquiring about Plaintiff's standing in the States of "Delaware, Texas, New York and other states" as well as Plaintiff's licensing, ability to "legally do business" and its legal status in "certain" unspecified states. *Id.* (emphasis removed). It is not clear from the Complaint where these purported customers were located, but, given Plaintiff's allegations, it appears those customers, if they exist, were likely scattered throughout the country.

### 3. The District Court In California Will Have A Greater Ability To Compel The Attendance Of Important Non-Party Witnesses At Trial

This Court also should consider the degree to which it will be able to compel non-party witnesses to appear for trial. *See Miracle Blade*, 207 F.Supp.2d at 1156 ("availability of compulsory process" should be considered when ruling on a Section 1404(a) motion). In *Kachal*, this Court transferred venue from Nevada to the Central District of California, and held that witnesses in California would be subject to subpoena if the case were to proceed in California, but would not be subject to subpoena if the case were to proceed in Nevada. *Kachal*, 738 F.Supp. at 373; *see also Horowitz v. Southwest Forest Industries, Inc.*, 612 F.Supp. 179, 182 (D. Nev. 1985) (transferring case from Nevada to Arizona, in part because of "the availability of compulsory process to obtain attendance of unwilling witnesses" in Arizona who could not be compelled to attend trial in Nevada); "The credibility of witnesses assumes a greater importance" where the "subjective intent" of the defendant is at issue, "thus rendering less satisfactory the use of deposition testimony of witnesses who can't be compelled to come to the trial." *Horowitz*, 612 F.Supp. at 182.

There are **_71_** individuals who *formerly* served as "telephone representatives" for LegalZoom since January 1, 2007, and who still reside in Southern California. Pellman Aff., ¶ 5-8; *see also* Ex. A to Pellman Aff. Another two individuals are former LegalZoom employees who served in supervisory capacities with knowledge of the practices, procedures and training policies regarding or relating to telephone sales or customer service at LegalZoom since January 1, 2007. Pellman Aff., ¶ 9. They, too, still reside in Southern California. Thus, there are at least **_73_** potential non-party witnesses to LegalZoom's liability who reside in Southern California. *Id.*, ¶¶ 5-9.[3] Those individuals are not under LegalZoom's control, and they would be outside of this Court's subpoena power for trial, but they would be within the subpoena power of the district

---

[3] LegalZoom does not concede that all of its current or former "telephone representatives" should be deposed whether this action proceeds in Las Vegas or Los Angeles, and LegalZoom does not waive the limits on depositions pursuant to Rule 30 of the Federal Rules of Civil Procedure. LegalZoom references those individuals in order to demonstrate the overwhelming number of potentially percipient witnesses located in Los Angeles, as opposed to this District.

court in Los Angeles. *See* FRCP 45(c)(3)(A)(ii) (limiting power of district court to subpoena witnesses to trial).

It is significant that Defendant's "subjective intent" is at issue because Plaintiff repeatedly alleges that LegalZoom acted maliciously and knowingly. *See, e.g.*, Complaint, ¶¶ 20, 27, 30, 34(a), 34(d). Thus, to the extent non-party liability witnesses are privy to LegalZoom's subjective intent, it is particularly important that the district court have the power to subpoena them to trial. *See Kachal*, 738 F.Supp. at 373; *Horowitz*, 612 F.Supp. at 182. Finally, the non-party witnesses who were purported or prospective customers of Plaintiff are presumably scattered throughout the country. *See* Complaint, ¶ 11 and note 2, *supra*. To them, this District would be no more or less convenient than the Central District of California. On balance, therefore, the Central District of California would be a more convenient, expeditious and effective forum for calling important non-party liability witnesses to trial.

### 4. It Would Be Relatively Easier To Access Sources Of Proof If This Action Were To Proceed In California

In *Miracle Blade*, this Court transferred the action from Nevada to the Central District of California where "nearly all relevant documents [were] believed to be located in Los Angeles." *Miracle Blade*, 207 F.Supp.2d at 1156. The *Miracle Blade* court went on to hold: "Based on the location of the majority of documents, it appears that transfer of this case to the Central District of California is in the interests of justice because it would make trial of this case easier, more expeditious, and less expensive." *Id.* at 1157.

Here, all known documents relating to LegalZoom's telephone representatives, including all sales and customer services scripts, training manuals, policies, and e-mail templates are located in Los Angeles. Pellman Aff., ¶ 10. Moreover, LegalZoom's computers and primary servers also are located in Los Angeles County, California. *Id.* To the extent liability determinations relate to those documents, it would be far easier, more expeditious and less expensive to conduct the trial

of this action where the sources of proof are located – in Los Angeles, California.[4]

### 5. On Balance, The Central District Of California Is A More Convenient Forum For The Parties

Section 1404(a) specifically identifies "convenience of the parties" as a factor to be considered by the Court. 28 U.S.C. § 1404(a). In *Actmedia, Inc. v. Ferrante*, 923 F.Supp. 42, 44 (S.D.N.Y. 1985), the court transferred venue from the Southern District of New York to the District of Oregon, and held that the corporate defendant with its principal place of business in Oregon "would be greatly inconvenienced and its business would be seriously disrupted in having to defend a suit" in New York, where almost all of the corporate witnesses were in Oregon, and the plaintiff, on the other hand, was "operating nationwide."

LegalZoom would be seriously and prejudicially inconvenienced by litigating this action in Las Vegas whereas Plaintiff would not be prejudiced by litigating in Los Angeles. Plaintiff alleges that its principal place of business is in Henderson, Nevada, but further alleges that it acts as "a registered agent for service of process in all 50 states and in the District of Columbia." Complaint, ¶ 2. Plaintiff further boasts that it is "currently the 4th largest national registered agent service provider in the country, with over 55,000 active clients worldwide." *Id.* The very nature of Plaintiff's business allegedly requires it to conduct business all over the country – indeed, the world. Plaintiff clearly prides itself on purportedly being able to conduct business anywhere in the United States. Plaintiff would not be inconvenienced by a trial in Los Angeles.

LegalZoom's operations are based in Los Angeles, California, and all but two of the 187 potential party and non-party liability witnesses and all records relating to liability are in California. Pellman Aff., ¶¶ 4-9. It would be a significant inconvenience, cost and disruption to LegalZoom's business to have discovery and trial proceed in this District. *See* Pellman Aff., ¶11. LegalZoom's telephone representatives have everyday responsibility for direct contact with LegalZoom customers via telephone and email. *Id.* The loss or lack of availability of even a

---

[4] LegalZoom does not concede that all such documents should necessarily be produced in the course of this action, whether it proceeds in Las Vegas or Los Angeles, and LegalZoom expressly reserves all potential objections to Plaintiff's anticipated document demands.

single employee for a scheduled shift has an immediate adverse impact on operations resulting in a diminished service experience for LegalZoom's customers, an increased workload placed on other employees and increased costs and burdens for LegalZoom. *Id.* Examples of such adverse impacts include but are not limited to: decreased sales for outbound calls resulting in lost revenue; increased wait times for customers calling into the LegalZoom call center; increased refunds and decreased customer satisfaction due to customer frustration over delays; delayed responses and overall degradation in customer service, which may have an adverse impact on customers expecting prompt turn-around times for assistance with certain products, *e.g.*, living wills, living trusts and powers of attorney; diminished staff morale from increased workload; and increased mandatory overtime costs pursuant to California labor laws. *Id.*

Another important consideration when evaluating the convenience of the parties is the location of counsel, and the convenience and cost associated with bringing counsel to the place of trial. This Court has held that the "cost of counsels' transportation to the place of trial ... has a direct bearing on the factors of convenience and cost." *Cambridge Filter*, 548 F.Supp. at 1311 (transferring case from Nevada to California where all counsel were from California, except for one from Nevada). Similarly, in *Miracle Blade*, this Court held that the case should be transferred from Reno to Los Angeles in part because defendant's lead attorneys were resident in the Los Angeles area, plaintiff's lead attorneys were not from Nevada and all parties "had to retain local counsel to practice before this court." *Miracle Blade*, 207 F.Supp.2d at 1157.

Here, lead counsel for both parties are from California and both parties had to retain "local counsel" to practice before this Court. Lead counsel for Plaintiff is from San Francisco. Transferring this case to Los Angeles will mean no addition cost or inconvenience associated with Plaintiff's counsel because it will be just as difficult and costly – if not easier and cheaper – for Plaintiff's counsel to travel from San Francisco to Los Angeles as it would be for Plaintiff's counsel to travel from San Francisco to Las Vegas. LegalZoom's lead counsel is from Los Angeles. Transferring this case to Los Angeles will dramatically reduce the cost and inconvenience to LegalZoom because it will obviously be far less inconvenient and costly for LegalZoom to have its lead counsel defend this case in Los Angeles.

On balance, the convenience to the parties tips sharply in favor of transferring the case to Los Angeles.

## IV. CONCLUSION

The location of the purported events giving rise to each of Plaintiff's claims, the convenience to the parties and witnesses, the relative ease of access to proof, and the increased availability of compulsory process for potentially key witnesses all weigh in favor of transferring this action to the United States District Court for the Central District of California.

DATED: March 19, 2009

**KEMP, JONES & COULTHARD, LLP**

By _____
WILL KEMP
Attorneys for Defendant LegalZoom.com, Inc.

**BOSTWICK & JASSY LLP**
Gary L. Bostwick (*pro hac vice* application pending)
   gbostwick@bostwickjassy.com
Jean-Paul Jassy (*pro hac vice* application pending)
   jpjassy@bostwickjassy.com
12400 Wilshire Boulevard, Suite 400
Los Angeles, California 90025
Tel: 310-979-6059
Fax: 310-314-8401

## AFFIDAVIT OF KATHRYN PELLMAN

I, Kathryn Pellman, on behalf of LegalZoom.com, Inc. ("LegalZoom"), and as its Director of Administration, hereby say and affirm that:

(1) I am a legal resident of the United States and a resident of the State of California, and an employee of LegalZoom, authorized in my capacity as such to attest to the following information. I have personal knowledge of the matters set forth below except for those matters stated on information and belief, which matters I believe to be true.

(2) As the Director of Administration, I have direct knowledge regarding the employment relationship of LegalZoom's current and former employees. I have held this position since November 9, 2006.

(3) I am preparing this affidavit in support of the Motion to Transfer Venue for the matter *Incorp Services v. LegalZoom.com*, United States District Court, District of Nevada., Case No. 2:09-CV-00273-RJH-(LRL).

(4) All LegalZoom telephone representatives, whether employees of LegalZoom or temporary non-employee workers retained by LegalZoom, including those charged with handling customer service and sales, are and have been at all times, physically located at LegalZoom's headquarters: 7083 Hollywood Blvd., Los Angeles, CA 90028.

(5) Since January 1, 2007, LegalZoom has employed 129 telephone representatives. Of these individuals, 82 are currently employed by LegalZoom.

///

-14-
MOTION TO TRANSFER VENUE

(6) Since January 1, 2007, LegalZoom used at least 41 temporary non-employee workers for telephone representative work. Of these individuals, 15 are current temporary non-employee workers for LegalZoom.

(7) Of the individuals listed in Paragraphs 5 and 6 above, 135 are or were customer service telephone representatives, and 35 are or were sales telephone representatives.

(8) On information and belief, all but two former employees referenced in Paragraph 5 and all former temporary non-employee workers referenced in Paragraph 6 reside in the Los Angeles or Southern California area, based on the last known residence provided to LegalZoom. Attached hereto as Exhibit A is an aggregate list of former employee telephone representatives still in California, including their last known city of residence.

(9) In addition to the individuals identified above, 15 current employees and 2 former employees in supervisory capacities have or had knowledge since January 1, 2007 of the practices, procedures and training policies regarding or relating to telephone sales or customer service. All such current employees reside in the Southern California area, and on information and belief, all such former employees still reside in the Southern California area.

(10) All sales and customer services scripts, training manuals, policies, and e-mail templates are located at LegalZoom's headquarters in Los Angeles, California. LegalZoom's computers and primary servers also are all located in Los Angeles County, California.

///

(11) LegalZoom telephone representatives have everyday responsibility for direct contact with our customers via telephone and email. The loss or lack of availability of even a single employee for a scheduled shift has an immediate adverse impact on operations resulting in a diminished service experience for our customers, an increased workload placed on other employees and increased costs and burdens for LegalZoom. Examples of such adverse impacts include but are not limited to: decreased sales for outbound calls resulting in lost revenue; increased wait times for customers calling into the LegalZoom call center; increased refunds and decreased customer satisfaction due to customer frustration over delays; delayed responses and overall degradation in customer service, which may have an adverse impact on customers expecting prompt turn-around times for assistance with certain products, *e.g.*, living wills, living trusts and powers of attorney; diminished staff morale from increased workload; and increased mandatory overtime costs pursuant to California labor laws.

Under penalty of perjury under the laws of the United States of America, I hereby affirm and state that the above information is true and correct to the best of my knowledge. Executed on March 19, 2009 at Los Angeles, California.

*[signature]*
Kathryn Pellman,
Director of Administration
LegalZoom.com, Inc.

**NOTARY:**

[SEAL]

State of California          )
                             )  ss.:
County of Los Angeles        )

On this 19th day of March, 2009, before me Claire Gutierrez, personally appeared Kathryn Pellman, Director of Administration for LegalZoom.com, Inc., who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

[Notary stamp: CLAIRE F. GUTIERREZ, COMM. # 1751862, NOTARY PUBLIC-CALIFORNIA, LOS ANGELES COUNTY, My Comm Exp JUNE 19, 2011]

_[signature]_, CLAIRE F. GUTIERREZ
Notary Public            NOTARY PUBLIC

CLAIRE F. GUTIERREZ
Printed Name

My commission expires on: 06-19-2011

-17-

# EXHIBIT A

**Demographic Data - *Former* Employees Who Still Reside In Southern California**

| *CA City* | *Employees* |
|---|---|
| Los Angeles | 17 |
| Glendale | 2 |
| North Hollywood | 2 |
| Tujunga | 2 |
| W. Hollywood | 2 |
| Alhambra | 1 |
| Arcadia | 1 |
| Burbank | 1 |
| Downey | 1 |
| Hawthorne | 1 |
| Inglewood | 1 |
| Lancaster | 1 |
| Long Beach | 1 |
| Mission Viejo | 1 |
| Montebello | 1 |
| Pasadena | 1 |
| Playa Del Rey | 1 |
| Redondo Beach | 1 |
| Rialto | 1 |
| S. Pasadena | 1 |
| San Pedro | 1 |
| Santa Fe Springs | 1 |
| Sherman Oaks | 1 |
| South Gate | 1 |
| Toluca Lake | 1 |
| **TOTAL** | **45** |