**BOSTWICK & JASSY LLP**
Gary L. Bostwick (admitted *pro hac vice*)
   gbostwick@bostwickjassy.com
Jean-Paul Jassy (admitted *pro hac vice*)
   jpjassy@bostwickjassy.com
12400 Wilshire Boulevard, Suite 400
Los Angeles, California 90025
Tel:   310-979-6059
Fax:   310-314-8401

**KEMP, JONES & COULTHARD, LLP**
Will Kemp (Bar No. 1205) (*Local Counsel*)
   mlj@kempjones.com
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
Tel:   702-385-6000
Fax:   702-385-6001

Attorneys for Defendant
LegalZoom.com, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| INCORP SERVICES, INC., a Nevada corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>LEGALZOOM.COM, INC., a Delaware corporation,<br><br>     Defendant. | Case No. 2:09-CV-00273-RJH-(LRL)<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff's entire case rests on the allegation that unidentified telephone representatives at defendant LegalZoom made tortious statements for which LegalZoom should be held responsible. LegalZoom denies that any such statements were made. In order to support LegalZoom's denial and disprove liability, LegalZoom presently intends to list 185 California-based individuals as trial witnesses who would be able to confirm that LegalZoom's telephone representatives never made such statements. LegalZoom's anticipated witnesses include 73 California-based non-party witnesses who could not be compelled to attend trial if this case proceeds in Nevada, but could be so compelled if the action proceeds in California. This Court's inability to compel the attendance of those 73 witnesses to trial in order to disprove liability would be severely prejudicial to LegalZoom's case. By contrast, Plaintiff identifies a total of only *five* potential trial witnesses, and only one purported non-party witness from Nevada. The applicable factors under 28 U.S.C. § 1404(a) leave no doubt that the convenience of witnesses and parties and the interests of justice weigh strongly in favor of transferring venue.

### II. PLAINTIFF DOES NOT DISPUTE THAT THIS ACTION "MIGHT HAVE BEEN BROUGHT" IN CALIFORNIA

The first step in deciding whether to transfer venue pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)") is for the Court to decide "whether the action sought to be transferred 'might have been brought' in the proposed transferee district." *International Patent Development Corp. v. Wyomont Partners*, 489 F.Supp. 226, 228 (D. Nev. 1980). Plaintiff does not dispute that this action might have been brought in California, as LegalZoom explained in its Motion. Mot. at 6:3-8. Thus, the Court moves to the second step in the Section 1404(a) analysis to determine "whether the transfer would be '(f)or the convenience of parties and witnesses, in the interest of justice.'"

1   *International Patent*, 489 F.Supp. at 228 (quoting Section 1404(a)).  As detailed in the Motion and

2   below, the second step weighs heavily in favor of transfer.[1]

3   **III.     THE BALANCING OF FACTORS WEIGHS OVERWHELMINGLY IN FAVOR**

4   **OF TRANSFERRING VENUE**

5       **A.     Plaintiff's Choice Of Forum Is Not Dispositive**

6       Plaintiff's preference to litigate this action in Nevada, even though it might have been

7   brought in California, is not dispositive.  *Kachal, Inc. v. Menzie*, 738 F.Supp. 371, 373 (D. Nev.

8   1990) ("a plaintiff's choice of forum is not the final word" in a Section 1404(a) analysis).  Plaintiff

9   relies on *Miracle Blade, LLC v. Ebrands Commerce Group, LLC*, 207 F.Supp.2d 1136 (D. Nev.

10  2002) and *Lou v. Belzerg*, 834 F.2d 730 (9th Cir. 1987), but those cases support LegalZoom, not

11  Plaintiff.  In *Miracle Blade*, this Court transferred an action from the plaintiff's preferred forum of

12  Nevada to the Central District of California, basing its decision in part on the fact that "many of

13  the activities giving rise to the litigation most likely occurred in the Central District of California."

14  *Id.* at 1156.  In *Lou*, the Ninth Circuit affirmed a district court's decision to transfer venue from

15  California to New York, notwithstanding the plaintiff's preference to litigate in California,

16  because *inter alia*, "the majority of witnesses live and work in the New York area where they are

17  subject to subpoena."  *Id.* at 739.

18      Plaintiff ignores other cases, cited by LegalZoom, that also undermine Plaintiff's

19  contentions.  In *Kachal*, 738 F.Supp. at 373, this Court transferred venue from Nevada to the

20  Central District of California even though the plaintiff was a Nevada corporation, it chose to

21  litigate in Nevada, and there was a contractual clause selecting Nevada as the parties' preferred

22

---

23      [1] Contrary to Plaintiff's suggestion, Opp. at 3 n. 1, there is no uniform set of factors
    applicable in every case.  The case cited by Plaintiff, *Jones v. GNC Franchising, Inc.*, 211 F.3d
24  495, 498 (9th Cir. 2000), recognizes that motions under Section 1404(a) are evaluated "according
    to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Id.* at 498.  Some
25  of the factors identified by Plaintiff simply do not apply in this case.  For example, the first factor
    identified by Plaintiff, the location where the relevant agreements were negotiated and executed,
26  clearly does not apply here, and is not discussed by either party.  LegalZoom addresses all
    pertinent factors in its Motion and this Reply, and replies to all additional factors raised in
27  Plaintiff's Opposition.

28

REPLY TO OPPOSITION TO MOTION TO TRANSFER
VENUE

forum, which is not present here. In *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F.Supp. 1308, 1311 (D. Nev. 1982), this Court transferred venue from Nevada to California even though the plaintiff chose to litigate in Nevada and the *defendant* was a Nevada corporation, which is not the case here.[2]

Any deference that would have been afforded to Plaintiff by its forum preference is outweighed by other factors showing that "the balance of conveniences" and the interests of justice favor transfer. *Miracle Blade*, 207 F.Supp.2d at 1155.

**B.**   **The Parties' Relative Contacts With Nevada And California Weigh In Favor Of Transfer, Especially When Considering The Contacts Relating To Plaintiff's Claims**

In *Kachal*, this Court held that "[c]onsideration must be given to both the defendants' and the plaintiff's contacts with the chosen forum, especially those relating to the cause of action." *Kachal*, 738 F.Supp. at 373.

**1.**   **The Evidence Does Not Show That LegalZoom Has A Meaningful Presence In Nevada**

Plaintiff cites online records from the website of the Nevada Secretary of State, and claims that LegalZoom is the "resident agent for over 1,000 companies." Opp. at 4:17 (citing Rosenfeld Decl., ¶ 3 & Ex. B). Plaintiff mischaracterizes the Nevada Secretary of State's records. The online records cited by Plaintiff actually show that only *eight* companies with an "Active" status list LegalZoom as their registered agent in Nevada; all the other companies are "Revoked," "Permanently Revoked," "Dissolved," "Merge Dissolved," "Convert Out," "Expired" or in "Default." Declaration of Jean-Paul Jassy ("Jassy Decl."), ¶ 2; Ex. 1.[3] Even those eight active companies that list LegalZoom as their registered agent in Nevada do so mistakenly because

---

[2] Plaintiff's assertion that LegalZoom somehow "ignored" its choice of forum is wrong. *See, e.g.,* Opp. at 1:13, 3:16. Rather, it is Plaintiff that ignored authorities undermining its contention that its forum preference should be given deference under the circumstances.

[3] Exhibit B to the Rosenfeld Declaration only lists 50 companies, only one of which is "Active" according to the Nevada Secretary of State. According to the complete list, only a total of eight active entities list LegalZoom as a registered agent in Nevada. Ex. 1.

LegalZoom does not serve as a registered agent in Nevada, and any entity that lists LegalZoom as its registered agent does so in error. Declaration of Tony Young, ¶ 2. This is reinforced by the Nevada Secretary of State's website, which does not list LegalZoom as a recognized registered agent in Nevada. Jassy Decl., ¶ 3; Ex. 2 (listing registered agents in Nevada, including Plaintiff, but *not* including LegalZoom). Plaintiff, by contrast, is a recognized agent for service of process in California, according to the California Secretary of State's website. Jassy Decl., ¶ 4; Ex. 3 (listing registered agents in California, including both Plaintiff and LegalZoom).[4]

## 2. There Is No Evidence That Either Party's Nevada Contacts Relate To Plaintiff's Claims

As this Court has made clear, the "especially" important consideration is how the parties' contacts with the chosen forum relate to the plaintiff's claims. *Kachal*, 738 F.Supp. at 373. There is no evidence that Plaintiff suffered any harm in Nevada, as opposed to the 49 other states where it operates. *See* First Amended Complaint ("FAC"), ¶ 11. There also is no evidence connecting LegalZoom's purported Nevada contacts to Plaintiff's claims. In the persuasive and pertinent decision of *Lomanno v. Black*, 285 F.Supp.2d 637, 642 (E.D. Pa. 2003), the court held that "venue will not be proper in a district for a defamation claim if injury is the only event occurring in that district." The *Lomanno* court further held that "plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum." *Id.* at 644 (internal quotation marks omitted).[5]

---

[4] LegalZoom respectfully requests that the Court take judicial notice of the contents of the websites of the Nevada and California Secretaries of State. *See* Fed. R. Evid. 201(b).

[5] Plaintiff purports to distinguish *Lomanno* by claiming to cite "Ninth Circuit case law." Opp. 4:27, 5:16. Plaintiff does not cite any decisions from the Ninth Circuit Court of Appeals, but rather cites three district court decisions that offer Plaintiff no aid. *See* Opp. 5:1-9. In *Williamson v. American Mastiff Breeders Council*, 2009 WL 634231, at *8 (D. Nev. Mar. 6, 2009), this Court transferred venue to Ohio under Section 1404(a) primarily because "most" non-party witnesses were closer to Ohio. Here, Defendants have identified 73 non-party witnesses in Southern California and Plaintiff has identified, at most, only one in Nevada (Doug Ansell). *Compare* Pellman Aff., ¶¶ 5-9 *with* Sedlacek Decl., ¶ 5. The decisions in *Larson v. Galliher*, 2007 WL 81930, at *3-4 (D. Nev. Jan. 5, 2007), and *Cummings v. Western Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1149-51 (D. Ariz. 2001), involved determinations of personal jurisdiction issues, and did not involve issues pertaining to a potential transfer of venue under Section 1404(a).

### 3. Plaintiff's Allegations And Both Parties' Evidence Show That California Is The _Only_ State With A Clear Connection To The Alleged Underlying Events

Each of Plaintiff's claims is based on statements purportedly made by LegalZoom's "telephone representatives." *See* FAC, ¶¶ 17-23, 28-30, 36-40, 46, 7:6-8, 7:25-26.[6] Plaintiff reminds the Court that "[t]elephone communications are necessarily made in two locations: 1) the location of the speaker, and 2) the location of the recipient." Opp. at 5 n. 2. If the purportedly tortious calls occurred, at least one person on each of those calls was always in Los Angeles. There is no dispute that *all* of LegalZoom's 170 telephone representatives were in California at the time the purported calls were made. Pellman Aff., ¶¶ 4-8.

There is scant, if any, evidence about the locations of the people on the other end of the calls with LegalZoom's telephone representatives. Plaintiff identifies only five people who *may* have heard allegedly tortious remarks by LegalZoom's telephone representatives. Sedlacek, ¶¶ 3, 5.[7] Plaintiff does not assert that any of its five proposed witnesses actually heard a LegalZoom employee make any purportedly tortious statements; nor does Plaintiff assert that any of its five witnesses was in Nevada when the events giving rise to liability occurred. There is no evidence

---

[6] LegalZoom does not contest personal jurisdiction, and, for that reason, LegalZoom does not dispute that venue in Nevada is proper at least under 28 U.S.C. § 1391(c) (venue is proper in any district where a corporate defendant may be subject to personal jurisdiction). The issue is whether venue should be transferred to another district "for the convenience of the parties and witnesses, in the interest of justice" pursuant to Section 1404(a), regardless of whether venue is proper in Nevada.

[6] Plaintiff stopped consecutively numbering paragraphs in the FAC after paragraph 49.

[7] Plaintiff vaguely alleges that three of its employees somehow "witnessed" LegalZoom's purported "misconduct at issue in this lawsuit *and/or* witnessed the harm" allegedly suffered by Plaintiff. Sedlacek Decl., ¶ 3 (emphasis added). Plaintiff's use of the phrase "and/or" falls far short of an assertion that its employees were the people on the other end of the telephone with LegalZoom's representatives. Likewise, Plaintiff's declarant does not assert that its two purported third party witnesses were ever on the telephone with LegalZoom; instead, the declarant vaguely states that those individuals will be called to "testify *about* the false and defamatory statements." Sedlacek, ¶ 5.

REPLY TO OPPOSITION TO MOTION TO TRANSFER VENUE

that anyone – not even Plaintiff's five witnesses – was in Nevada or on the telephone when the critical events underlying this case allegedly occurred.

Only one thing is certain from the allegations and evidence advanced by the parties: at least one party to each alleged telephone call – *i.e.*, each alleged event at issue in this case – was in California. The location of the other parties to the telephone calls is uncertain. Thus, California has the greatest connection to the events underlying this case.[8]

### 4. The Five Witnesses Identified By Plaintiff Do Not Support The Contention That This Action Should Stay In Nevada

Plaintiff lists a third party witness from Plano, Texas as a potential witness. Sedlacek Decl., ¶ 5.b. There is no indication that this individual has ever been to – or conducted business in – Nevada. The fact that he is located in Texas lends no support to having this case proceed in Nevada.

Plaintiff's only other purported "third party" witness is Doug Ansell. Sedlacek Decl., ¶ 5.a. Plaintiff fails to disclose an important fact about Mr. Ansell. As recently as January 8, 2008, Mr. Ansell was identified in court papers – filed by his counsel and Plaintiff's counsel – as an "officer and director" of Plaintiff. Jassy Decl., ¶ 5; Ex. 4 at ¶ 3.[9] That calls into serious question whether Mr. Ansell was really a "third party" at the time the allegedly tortious statements were supposedly made. FAC, ¶ 17 (alleging that the purportedly tortious statements were made "since at least 2008").

Plaintiff's three other purported witnesses are currently employees of Plaintiff. Sedlacek, ¶ 3. Assuming *arguendo* that allegedly tortious statements about Plaintiff were made to Plaintiff's

---

[8] Plaintiff also asserts that it suffered harm in Nevada, *see, e.g.,* Opp. at 5:12-13, but Plaintiff advances **no** evidence to support this contention. Plaintiff alleges that it operates nationwide. FAC, ¶ 11. The harm, if any, could have been felt anywhere Plaintiff operates, and there is no evidence that the alleged harm is particularized to Nevada.

[9] LegalZoom respectfully requests that the Court take judicial notice of the contents of Exhibit 3 to the Jassy Declaration, which is a true and correct copy of the Second Amended Complaint from this Court's files in the matter of *Incorp Services, Inc. and Doug Ansell v. Nevada State Corporate Network, Inc., et al.*, U.S. Dist. Ct., D. Nev., Case No. 2:07-CV-1014-KJD-PAL. *See* Fed. R. Evid. 201.

REPLY TO OPPOSITION TO MOTION TO TRANSFER VENUE

representatives – *i.e.*, assuming the statements were made to Plaintiff's three employees and Mr. Ansell, as an "officer and director" – such statements cannot give rise to liability under any of Plaintiff's claims because Plaintiff's claims require representations to **third persons**, not to Plaintiff.[10]

## C. The Evidence Before The Court Makes Clear That The Convenience To Witnesses Weighs In Favor Of Transfer

Plaintiff does not dispute that the convenience of witnesses is a "primary concern," *Cambridge Filter*, 548 F.Supp. at 1311, and "of considerable importance," *Kachal*, 738 F.Supp. at 373, when ruling on a Section 1404(a) motion. Plaintiff also does not dispute that, when considering a transfer of venue, witnesses to liability are more important than damages witnesses because "without liability, there are no damages to recover." *Ramsey v. Fox News Network, LLC*, 323 F.Supp.2d 1352, 1357 (N.D. Ga. 2004).

There are 168 people in Southern California with direct personal knowledge showing that the purportedly tortious calls at issue in this case never took place. Pellman Dec., ¶¶ 4-8. The testimony of those people will be a major elements in LegalZoom's efforts to disprove liability at trial, and their convenience is a "primary concern," *Cambridge Filter*, 548 F.Supp. at 1311.[11]

---

[10] *See, e.g., Aetna Cas. & Sur. Co., Inc v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (claim for trade libel under 15 U.S.C. § 1125(a) requires "publication … which induces **others** not to deal with plaintiff") (emphasis added); *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1272 (Nev. 1995) (defamation requires "publication to a third party"); *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 732 F.2d 1403, 1407 (9th Cir. 1984) (tying arrangements require representations or coercion made to potential purchasers, not competitors); N.R.S. § 598A.060(d) (same); *Wichinsky v. Mosa*, 847 P.2d 727, 729-730 (Nev. 1993) (tort of interference with prospective economic advantage requires "preventing [a] relationship" with a third party). Plaintiff's allegations in the FAC implicitly acknowledge that only statements to customers are at issue. *See, e.g.,* FAC, ¶¶ 3-4.

[11] Plaintiff's insistence that LegalZoom has not identified trial witnesses, *see, e.g,* 6:15-21, 7:1-2, is obviously wrong, and the issue must be put to rest. LegalZoom repeatedly made clear in its Motion that the testimony of the 187 party and non-party individuals would be a major focus at trial. *See, e.g.,* 8:11-20, 9:1-2, 9:16-10:12. Because of the nature of Plaintiff's allegations, LegalZoom needs to be able to call all 170 current and former telephone representatives and all 17 of the telephone representatives' current and former supervisors if necessary.

Plaintiff has identified only five potential witnesses. Sedlacek Decl., ¶¶ 3, 5. Even if all five were competent to testify as to liability, which is doubtful for the reasons stated above, the balance of conveniences to the witnesses tips overwhelmingly in favor of transferring venue. On the one hand, are 185 liability witnesses in Southern California, and on the other hand are four witnesses in Nevada and one in Texas. The scale tips decidedly westward on this factor.

**D.** **This Court Could Not Compel The Attendance Of *73* Important Non-Party Witnesses At Trial, Whereas The District Court In California Could Do So**

Plaintiff relegates to a footnote its discussion of one of the most important factors for the Court to consider in evaluating this Motion: which forum would be better able to compel the attendance of non-party witnesses at trial. Opp. at 7 n.4. In case after case, this Court has recognized the importance of this factor. *See, e.g., Williamson*, 2009 WL 634231, at *8 (D. Nev. Mar. 6, 2009) (transferring venue from Nevada to Ohio primarily because "most of the non-party party witnesses will come from East of the Mississippi River" and "virtually no non-party witnesses would appear in a trial in Nevada"); *Kachal*, 738 F.Supp. at 373 (transferring venue from Nevada to the Central District of California in large part because "[m]any of these witnesses from southern California will not be subject to the subpoena power of this Court for trial"); *Horowitz v. Southwest Forest Industries, Inc.*, 612 F.Supp. 179, 182 (D. Nev. 1985) (transferring venue from Nevada to Arizona in part because non-party witnesses could not be compelled to attend trial in Nevada, and noting the "importance" of this factor).

There are 73 non-party witnesses (former telephone representatives and supervisors) who live in Southern California who could testify as to liability in this matter and help to exonerate LegalZoom. *See* Pellman Aff., ¶¶ 4-9. Plaintiff does not dispute that this Court would be unable to compel the attendance of those witnesses at trial. Mot. 9:23-10:2. Plaintiff also does not dispute that a federal district court in California, on the other hand, *would* be able to compel those same witnesses to trial. *See* FRCP 45(c)(3)(A)(ii). It would be unjust for this case to proceed without the ability to compel those 73 witnesses to attend trial.

Finally, plaintiff does not dispute that it has put LegalZoom's subjective intent at issue. *See* Mot. 10:3-12; *see also* FAC, ¶¶ 19, 21, 28, 32, 38, 39, 42, 7:23-24. This point is important

because the "credibility of witnesses assumes a greater importance [where subjective intent is at issue], thus rendering less satisfactory the use of deposition testimony of witnesses who can't be compelled to come to the trial." *Horowitz*, 612 F.Supp. at 182.

The balance on this important factor weighs in favor of a transfer.

**E.** **Plaintiff Does Not Establish That Nevada Law Will Govern The Common Law Claims Or That A Federal Court In California Would Be Incapable Of Understanding Nevada Law**

Plaintiff has advanced no argument or analysis to suggest that Nevada law would apply to its common law claims. "In a federal question action that involves supplemental jurisdiction over state law claims" a federal court applies choice of law rules of the forum state. *Paulsen v. CNF Inc.*, 559 F.3d 1061 (2009). Nevada applies to most torts the "most significant relationship to the occurrence and parties" test, as described in the Restatement (Second) of Torts § 145. *See General Motors Corp. v. Eighth Judicial Dist. Ct.*, 134 P.2d 111, 116 (Nev. 2006). As explained above, there is no evidence that any of the tortious remarks were made or received in Nevada, and the only State with a clear connection to the underlying events (*i.e.*, the telephone calls) is California. Although Plaintiff alleges that it is a Nevada corporation, there is no evidence that any harm was felt in Nevada as opposed to the 49 other states where Plaintiff does business, *see* FAC, ¶ 11. There is uncertainty as to the choice of law even if this action remains in Nevada. Thus, the existence of Plaintiff's common law claims should not weigh against transfer.

Also, even assuming that Nevada law were to apply to the pendent state law claims in this action if this action proceeds in Nevada, or, alternatively, that California law would apply if this action were to proceed in California, Plaintiff has made no showing that there is any substantive difference between Nevada's and California's law of defamation, interference with prospective economic advantage or unfair competition. California recognizes the torts of defamation, *see* Cal. Civ. C. § 44, and interference with prospective economic advantage, *see Arntz Contracting Co. v. St. Paul Marine & Fire Ins. Co.*, 47 Cal. App. 4th 464, 475 (1996). California also has a statute on unfair competition, Cal. Bus. & Prof. § 17200, *et seq.*, along with a specific provision regarding

tying arrangements that is very similar to Nevada's. *Compare* Cal. Bus. & Prof. C. § 16727 *with* N.R.S. § 598A.060(d).

There is no reason to believe that a federal district court in California could not evaluate and apply Nevada law if that were necessary and appropriate. A federal district court in California would be fully capable of evaluating and applying Nevada law, assuming that Nevada law were to apply to Plaintiff's common law claims. A federal district court in California also would be fully capable of understanding Nevada's unfair competition statute, particularly given its similarities to California law. Also, Plaintiff's state law unfair competition claim is pleaded nearly identically to Plaintiff's federal unfair competition claim, FAC, at 6:10-7:16. A federal court in California evaluating the federal unfair competition claim under 15 U.S.C. § 1 would also be able to evaluate the Nevada unfair competition claim. Finally, although this Court likely has familiarity with the Nevada unfair competition laws invoked by Plaintiff, N.R.S. §§ 598A.060 and 598A.160, there is, according to Westlaw, only one reported decision interpreting those laws in any context, and that case did not relate to tying arrangements. *See Whistler Investments, Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159 (9th Cir. 2008). Thus, a federal district court in California would likely not be at a disadvantage when interpreting Nevada's unfair competition laws.

### F. The Access To Sources Of Proof Tips In Favor Of Transfer

In 2002, this Court transferred an action from Nevada to the Central District of California, holding specifically that a because "a majority of documents" and "nearly all relevant documents [were] believed to be located in Los Angeles," "it appears that transfer of this case to the Central District of California is in the interests of justice because it would make trial of this case easier, more expeditious, and less expensive." *Miracle Blade,* 207 F.Supp.2d at 1156-57. Plaintiff makes no effort to distinguish this authority, which was cited in the Motion. Mot. at 10:15-20.

Plaintiff challenges the relevance of the documents identified by LegalZoom, *see* Pellman Aff., ¶ 10, including its policies and training manuals, Opp. at 8:3-5, but Plaintiff's FAC alleges that it was, among other things, LegalZoom's "***policy*** of systematically making false statements about Plaintiff" that has caused Plaintiff harm. FAC, ¶ 22 (emphasis added); *see also id.*, ¶ 15.

Plaintiff then claims that LegalZoom disregards other documents supposedly located outside California, Opp. at 8:6-9, but Plaintiff has advanced **no evidence** that any such documents exist.

Consistent with this Court's decision in *Miracle Blade*, this factor tips in favor of transfer.

**G.** **Contrary To Plaintiff's Assertions, LegalZoom Presented Ample Evidence That It Would Be Seriously Disruptive And Expensive To Litigate In Nevada**

LegalZoom provides this Court with a detailed description of precisely how and why a trial in Nevada would seriously disrupt LegalZoom's business. Pellman Aff., ¶ 11. Ms. Pellman details in her Affidavit, with precise examples, how the "loss or lack of availability of even a single employee for a scheduled shift has an immediate adverse impact on operations resulting in a diminished service experience for [LegalZoom's] customers, an increased workload placed on other employees and increased costs and burdens for LegalZoom." *Id.* Requiring approximately *100* LegalZoom employees, *see* Pellman Aff., ¶¶ 5, 6, 9, to travel to and from Las Vegas for trial would be an extraordinary burden and inconvenience. In contrast to LegalZoom's detailed descriptions of inconvenience, Plaintiff asserts in a most conclusory fashion that compelling just *three* of its employees at a managerial level to attend trial in Los Angeles would be inconvenient. Sedlacek, ¶¶ 3, 4. The balance of conveniences, based on the evidence presented, weighs in favor of transfer.

LegalZoom also detailed, with supporting authority, how it would be far more convenient and cost-effective to litigate this matter in Los Angeles because LegalZoom's lead counsel is in Los Angeles. Mot. at 12:11-28 (citing *Cambridge Filter*, 548 F. Supp. at 1311 and *Miracle Blade*, 207 F.Supp.2d at 1157). Plaintiff has no response to this authority or analysis. Plaintiff's lead counsel is in San Francisco and will have to travel whether this case proceeds in Las Vegas or Los Angeles. Again, the balance of conveniences weighs in favor of transfer.

**H.** **This Court And The Central District Of California Are Both Congested, So That Should Not Stop A Transfer**

Plaintiff's assertion that this Court has fewer cases than the Central District of California, *see* Opp. at 9:2-3, paints an incomplete picture because it does not account for the number of district judges in the respective districts or the number of cases with no court action. As this Court

knows, there are 10 federal district court judges in Nevada (six in Las Vegas and four in Reno). By contrast, there are 35 federal district court judges in the Central District of California.[12] Using the year-old figures provided by Plaintiff, there are approximately 244 cases per federal judge in the Central District of California and 172 cases per federal judge in Nevada. Plaintiff's Ex. A at 5. If one eliminates the cases with "no court action" there are approximately 154 cases per federal judge in the Central District of California and 106 cases per federal judge in Nevada. *Id.* These statistics show that both districts are congested, and their respective dockets should not preclude a transfer.

## IV.    CONCLUSION

The evidence and applicable law demonstrate that the convenience of the parties and witnesses and the interests of justice weigh strongly in favor of transferring this action to the United States District Court for the Central District of California. LegalZoom therefore respectfully requests that its Section 1404(a) motion be granted.

DATED: April 20, 2009

**BOSTWICK & JASSY LLP**

By     _____/s/ Jean-Paul Jassy_____
                         JEAN-PAUL JASSY
                 Attorneys for Defendant LegalZoom.com, Inc.

---

[12] *See* www.cacd.uscourts.gov/CACD/JudgeReq.nsf.

REPLY TO OPPOSITION TO MOTION TO TRANSFER VENUE